IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Case No. 06-cv-02061-LTB-MJW

MERCEDES ARCHULETA,

      Plaintiff,

v.

MICHELLE WAGNER, in her individual capacity; D.L. MANDELKO, in her individual capacity;
SHAYNE BUTLER, in his individual capacity; and TED MINK, JEFFERSON COUNTY SHERIFF,
in his official capacity,

      Defendants.

_____

# ORDER

_____

The plaintiff, Mercedes Archuleta, a 46-year old married mother of nine, endured the

vexing consequences of mistaken identity, which gave rise to her arrest and, ultimately, to this

action.  D. L. Mandelko, a Deputy Sheriff, and Shane Butler, a trooper of the Colorado Highway

Patrol (whose name is misspelled in the caption), move for dismissal, asserting defenses of

qualified immunity.  Ted Mink, the Sheriff of Jefferson County, also moves for dismissal.

In determining whether law enforcement officers are entitled to immunity from suit, courts

are required to resolve the issue at the earliest possible stage of the proceedings; officers who did

not violate a clearly-established right of the plaintiff are entitled to forego the expense and trouble

of litigation.  In ruling upon a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), a court

is to accept as true all of the well-pled allegations of the complaint.  Where, as here, the parties

dispute the operative facts, these mandates collide.  I am obliged to accept Mrs. Archuleta's

allegations as true, notwithstanding the defendants' denials.  Thus, resolution of the question

whether the Officer Butler enjoys qualified immunity must await the completion of discovery; his motion to dismiss is GRANTED in part and DENIED in part.  For the reasons stated below, the motion to dismiss of Deputy Mandelko and Sheriff Mink is GRANTED in part and DENIED in part.

## I.  Allegations

The allegations of the complaint are the following.  On April 18, 2005, a woman named Phyllis Rivera, who used the alias Mercedes Archuleta, among others, assaulted her girlfriend, with whom she had been involved in an intimate relationship, in a drug store where the girlfriend had gone to make an emergency telephone call.  To police, who responded to the scene, the girlfriend identified Ms. Rivera as Mercedes Archuleta.  The defendant Michelle Wagner, an officer of the Lakewood Police Department ("LPD"), applied for and obtained a warrant for Ms. Rivera's arrest, purportedly identifying Ms. Rivera by Mrs. Archuleta's name, date of birth, physical description, driver's license number, and Social Security number.

On June 12, 2005, Mrs. Archuleta, her husband, and five of their children traveled in their Ford Escort, which Mr. Archuleta drove.  Not all of the children, riding in the rear seat, were restrained as required by law.  Officer Butler stopped the Archuletas and inquired into the shortage of restraints.  Of particular interest was a five-month old infant who was not buckled into a child safety seat.  At Officer Butler's request, Mr. Archuleta produced a safety seat from the trunk.  Officer Butler then instructed Mr. Archuleta to write the names and ages of the children on a note pad, which Officer Butler produced.  He then allegedly ordered Mr. Archuleta back into the car.

Officer Butler is alleged to have shouted at the children and Mrs. Archuleta.  He instructed

the children to show him their seat belts.  He then allegedly demanded licenses from both Mr. and

Mrs. Archuleta and instructed Mr. Archuleta to summon an acquaintance to retrieve some of the

children.  While Officer Butler submitted the Archuletas' information to the dispatcher, Mrs.

Archuleta began nursing her infant.

Presently, two additional patrol cars arrived.  Officer Butler then returned to the

Archuletas' vehicle.  He informed Mr. Archuleta that his license was suspended.  Mr. Archuleta

protested that he had settled the matter underlying the suspension.  Officer Butler advised Mr.

Archuleta that he could demonstrate the satisfaction in court.  He instructed Mr. Archuleta to

summon someone to remove his car.

Officer Butler then allegedly turned and walked around the car, yelling at Mr. Archuleta to

take the infant from Mrs. Archuleta.  Mr. Archuleta declined, "at which point Defendant Butler

screamed, 'Take the baby from your wife!'" Complaint ¶ 59.  Mrs. Archuleta then alighted from

the car, her blouse untied and her "breasts partially exposed."  *Id*. at ¶ 60.  Officer Butler allegedly

pushed Mrs. Archuleta against her car and cuffed her hands behind her back.  He purportedly

"ignored" Mrs. Archuleta's repeated requests "that she be allowed to tie up her shirt and cover

her breasts."  *Id*. at ¶ 62.  He directed her to the trunk of the car, bent her over the trunk, frisking

her and removing her jewelry.  He then delivered her to the front passenger seat of his patrol car,

where she remained while he and other officers questioned Mr. Archuleta.  The Complaint states,

"When Defendant Butler returned to the patrol car, he sat in the driver's seat and leaned across

Mrs. Archuleta, whose shirt was still open, and pressed his body against her, while he fastened her

seat belt."  *Id*. at ¶ 66.

As Officer Butler pulled away from the scene, Mrs. Archuleta witnessed her husband and

tearful children corralled by police officers in an unsafe position on the shoulder of the road.  In the patrol car, Officer Butler told Mrs. Archuleta that he had arrested her pursuant to a warrant predicated upon domestic violence.  Mrs. Archuleta protested her innocence.  Officer Butler allegedly conceded that he believed Mrs. Archuleta but insisted that he had to comply with the warrant's mandate.  He drove her to the Jefferson County Detention Facility, where he uncuffed her long enough to allow her to fasten her blouse, then re-fastened the cuffs.

Inside the jail, Mrs. Archuleta underwent two additional frisk searches, which produced no contraband.  She continued to espouse her innocence.  Deputy Mandelko, assigned to book Mrs. Archuleta into custody, performed a computer search of unspecified files, which purportedly raised doubt as to whether Mrs. Archuleta was the assailant whom the LPD suspected.  Deputy Mandelko allegedly opined to a co-worker, "This isn't her," and, to Mrs. Archuleta, "I know you're innocent, hon."  Complaint ¶¶ 75, 83.  Deputy Mandelko nevertheless booked Mrs. Archuleta into custody.

Deputy Mandelko performed a strip search of Mrs. Archuleta, which county policy requires for intake of detainees suspected of violent crimes.  When Mrs. Archuleta's breast milk began to run, Deputy Mandelko gave her a bisected "maxi-pad" to stem the flow.  Deputy Mandelko allegedly joked about this with another officer.  She then detained Mrs. Archuleta alone in a cell "for several hours."  *Id*. at 84.  Mr. Archuleta presently relinquished bond and Mrs. Archuleta was released.  Upon a subsequent motion by the City of Lakewood, a municipal court dismissed the charges against Mrs. Archuleta, directing that the record of her arrest reflect the inaccuracy of the warrant.

Mrs. Archuleta states: against Officer Butler two claims of unlawful search and seizure,

against Deputy Mandelko a claim of unlawful seizure and deprivation of liberty without due process, and against Deputy Mandelko and Sheriff Mink a claim of an unlawful strip search and a prayer for declaratory relief that the search unlawfully infringed her privacy rights.

## II. Discussion

Officer Butler and Deputy Mandelko assert defenses of qualified immunity. They dispute Mrs. Archuleta's account in material respects. In particular, Officer Butler "vehemently disputes that Plaintiff's breasts were ever exposed during the course of her arrest, denies that she was placed up against the vehicle and disputes her account of the detention overall." Brief in Support of Defendant Shane Butler's Motion to Dismiss, 20 n.5. Nevertheless, they argue, taking all of the allegations as true and reading them in the light most favorable to her, as I must, Mrs. Archuleta has failed to meet her burden under *Saucier v. Katz*, 533 U.S. 194, 200, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). Sheriff Mink argues that his department's strip search policy is constitutional, both generally and as applied to Mrs. Archuleta.

### A.     Qualified immunity

"Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier*, 533 U.S. at 200. The privilege is an immunity from suit rather than a mere defense to liability. *Id*. "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id*. at 201.

If the facts implicate no constitutional right, the inquiry ends and I must find for Officer Butler and Deputy Mandelko. *Ibid*. On the other hand, if a violation can be made out, I am to

review the specific facts of the case to determine whether Officer Butler or Deputy Mandelko

violated a right that was clearly established. *Id.* "The relevant, dispositive inquiry in determining

whether a right is clearly established is whether it would be clear to a reasonable officer that his

conduct was unlawful in the situation he confronted." *Id.* at 202. Thus, a material issue of fact

on the underlying claim is insufficient, by itself, to defeat summary judgment. *Id.* This doctrine is

designed to protect all but the plainly incompetent or those who knowingly violate the law. *Jiron*

*v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004). Accepting as true all well-pled

allegations, *Moya v. Schollenbarger*, 465 F.3d 444, 455 (10th Cir. 2006), I attempt to discern

whether the complaint describes conduct the unlawfulness of which was clear to Deputy

Mandelko and Officer Butler.

### 1.      Officer Butler

Citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 121 S. Ct. 1536, 149 L. Ed. 2d 549

(2001), Officer Butler argues that his observations of the unrestrained Archuleta children

predicated a lawful detention under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889

(1968), which turned into a lawful arrest when he was apprised of the outstanding warrant for

Mrs. Archuleta's arrest. In *Atwater*, the Supreme Court found lawful a warrantless arrest for a

misdemeanor seatbelt violation. A police officer, after stopping the plaintiff for a seatbelt

infraction, yelled "something to the effect of '[w]e've met before' and 'you're going to jail.'"

*Atwater*, 532 U.S. at 324. After the plaintiff failed to produce a driver's license and proof of

insurance, the officer arrested her, leaving her children with a friend of the plaintiff who

responded to the scene. *Id.* The officer handcuffed the plaintiff and drove her to the local police

station. *Id.*

The Court affirmed entry of summary judgment against the plaintiff on her subsequent Section 1983 claim.  It opined that "the physical incidents of arrest were merely gratuitous humiliations imposed by a police officer who was (at best) exercising extremely poor judgment." *Ibid* at 346-347.  Nevertheless, it declined to draw a line between major and minor crimes for Fourth Amendment purposes.  *Id*. at 347-354.  Furthermore, the Court concluded that the arrest was not made in an extraordinary manner and was not unusually harmful to the plaintiff's privacy or physical interests.  *Id*. at 354-355.  "The arrest and booking were inconvenient and embarrassing to Atwater, but not so extraordinary as to violate the Fourth Amendment."  *Id*. at 355.

Mrs. Archuleta first argues that Officer Butler unreasonably detained her by demanding her license in addition to her husband's.  She points out that the statute requiring restraint of children in cars places responsibility on the driver, not on parent-passengers.  Colo. Rev. Stat. § 42-4-236(2)(c); *Wark v. McClellan*, 68 P.3d 574, 580 (Colo. Ct. App. 2003).  Second, she argues that the manner of her arrest was unreasonable.

Officer Butler's invocation of *Atwater* begs the question but does not answer it.  He certainly was justified in stopping the Archuletas for failure properly to restrain their children.  And his decision to obtain the licenses of both Mr. and Mrs. Archuleta violated no clearly-established rule to the contrary.  Indeed, it is not at all clear that Officer Butler's possession of Mrs. Archuleta's license constituted a detention at all; Mr. Archuleta, the driver of the car, was not going anywhere until his license was returned to him.  And though the applicable statute made Mr. Archuleta, as driver, responsible for the failure to restrain the Archuleta children,  Officer Butler did not abuse his authority by inquiring into Mrs. Archuleta's fitness to transport some or

all of the five children.  Soliciting Mrs. Archuleta's license was not clearly unlawful under the circumstances.

The operative question, however, is whether Officer Butler accomplished the arrest in an extraordinary manner.  Mrs. Archuleta alleges that she alighted from her car with her blouse untied and that Officer Butler prevented her from tying it until they reached the detention facility.  She further alleges that Officer twice pressed her against the car with her breasts exposed, once at the side of the vehicle and once over the trunk.  And she insinuates that Officer Butler took advantage of the situation by pressing his chest against her exposed breasts in the patrol car.  These are serious allegations that, if true, describe an unreasonable arrest.  Maintaining an arrestee in a state of undress is the type of degrading conduct that, if done unnecessarily, implicates the Fourth Amendment.  *Ames v. Brown*, 2006 WL 1875374, *4 (10th Cir. 2006)(unpublished); *Cottrell v. Kaysville City*, 994 F.2d 730, 734 (10th Cir. 1993).

Because the immunity of a law enforcement officer is immunity from suit and not merely from liability, the claims against Officer Butler must be circumscribed to avoid unnecessary litigation expense.  I will thus grant his motion to dismiss the second claim, which is predicated upon the detention and arrest, and deny his motion to dismiss the third claim, predicated upon the *manner* in which he performed the arrest.  Discovery and trial will be limited to this narrow issue.

### 2.      Deputy Mandelko

Mrs. Archuleta faults Deputy Mandelko both for booking her into custody despite acknowledging her innocence and for performing the strip search.  I will consider the first issue here.  I address the strip search at length below.

Mrs. Archuleta contends, "It is clearly established that a police officer may not knowingly

detain an innocent person... ."  Plaintiff's Omnibus Response to Defendants' Motions to Dismiss ("Response"), 14.  The ambiguity of this contention is no doubt unintentional.  It is clear that an officer may knowingly detain a person who is innocent if the officer does not know the person to be innocent.  It appears likely that an officer with authority to release a person may not detain that person knowing that person to be innocent.  However, it is anything but clear that Deputy Mandelko acted unlawfully here.

Mrs. Archuleta cites *Sanders v. English*, 950 F.2d 1152 (5th Cir. 1992) for the proposition that a facially-valid warrant "does not insulate an officer who knows that she has an innocent person, but jails them anyway."  Response, 14.  In *Sanders*, the detaining officer failed to notify the police chief and the prosecutor of exculpatory evidence that came to his attention during the fifty-day detention of the plaintiff.  *Sanders*, 950 F.2d at 1154.  This failure was especially significant in light of the officer's familiarity with the exculpatory witnesses and his ability to vouch for their credibility.  *Id*. at 1164.  On that ground, the court reversed entry of summary judgment in favor of the detaining officer.  *Id*.  The case neither stands for the proposition that Mrs. Archuleta attempts to derive from it nor bears any relation to the allegations of the complaint in this case.  Nothing appears to suggest that Deputy Mandelko unjustly prolonged Mrs. Archuleta's detention or withheld exculpatory evidence from those with authority to set Mrs. Archuleta free.

Mrs. Archuleta does not dispute that Deputy Mandelko had no duty to investigate her claims of innocence.  *Baker v. McCollan*, 443 U.S. 137, 145-146, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979).  Furthermore, Deputy Mandelko's subjective belief in Mrs. Archuleta's innocence would have constituted an insufficient ground to release Mrs. Archuleta without a judicial

9

determination that probable cause was lacking.  Indeed, far from clearly establishing that Deputy Mandelko acted unlawfully, the authorities make quite clear that she acted both prudently and lawfully.

In *Romero v. Fay*, 45 F.3d 1472 (10th Cir. 1995), the Tenth Circuit ordered judgment in favor of officers who detained the plaintiff despite the plaintiff's protestations of innocence.  The court held that the officers did not act unlawfully by failing to interview the plaintiff's alibi witnesses, who would have exculpated the plaintiff.  *Id*. at 1476-1477, 1479.  Indeed, allowing the prosecution to proceed on the basis of other, inculpatory testimony did not even amount to a constitutional violation.  *Id*. at 1478.  *See also*, *Echols v. Wyandotte County*, 399 F. Supp. 2d 1201 (D. Kan. 2005); *Miller v. Bd. of County Comm'rs of County of Rogers*, 46 F. Supp. 2d 1210 (N.D. Okla. 1999).

Authority from other circuits is consistent with these rulings.  *Brady v. Dill*, 187 F.3d 104, 109 (1st Cir. 1999); *Sanchez v. Swyden*, 139 F.3d 464, 468 (5th Cir. 1998); *Young v. City of Little Rock*, 249 F.3d 730 (8th Cir. 2001); *Rodriguez v. Farrell*, 280 F.3d 1341, 1347 n.15 (11th Cir. 2002).  The *Young* decision is particularly instructive.  Ms. Young was a passenger in a vehicle stopped for a minor traffic violation on a Saturday afternoon.  The car computer of the officer who made the stop indicated an active arrest warrant for Ms. Young, and a dispatcher confirmed. In truth, the warrant had issued for the arrest of a woman who used Ms. Young's name as an alias.  An intake deputy booked Ms. Young into the county jail despite receiving a copy of the warrant.  Ms. Young was strip searched.  After reviewing the warrant and an attached photograph, the arresting officer concluded that he had brought in the wrong woman. Nevertheless, the officers kept Ms. Young in jail until Monday, when she appeared in court and a

judge ordered her release.  *Young*, 249 F.3d at 732.

The Eighth Circuit affirmed the district court's dismissal of Ms. Young's Section 1983

claim that her arrest and detention over the weekend violated the Fourth Amendment.  *Ibid* at

734-735.  The court noted that, after Ms. Young was taken to jail, the arresting officer was aware

that her name appeared in the database only as an alias for another woman.  *Id*. at 734.

Significantly, the court stated,

> Ms. Young argues that Officer Brown and, through him, Sergeant Haggard, had actual
> knowledge at this point that Ms. Young had been improperly arrested.  We think this
> overstates the case.  Certainly there was reason to question whether a mistake had been
> made, but the situation was equivocal.  Officer Brown had originally been informed that
> there was a warrant for Ms. Young in her own name.  Thereafter, he learned that Ms.
> Walker had been using Ms. Young's name as an alias.  The photograph did not match the
> appearance of the person arrested.  On these facts, we believe that an objectively
> reasonable officer could have decided to wait for a judge to make the final determination.

*Id*. at 735.

Review of *Young* and other relevant authority compels the conclusion that Deputy

Mandelko violated no clearly-established rights of Mrs. Archuleta by booking her into custody.

The claim against Deputy Mandelko for unlawful seizure and deprivation of liberty must be

dismissed.

## B.      Constitutionality of the strip search

Mrs. Archuleta next challenges as unconstitutional the strip search that Deputy Mandelko

performed at the jail.  She cites the long string of (accurate) adjectives employed to describe a

strip search in *Mary Beth G. v. City of Chicago*, 723 F.2d 1263 (7th Cir. 1983) and *Chapman v.*

*Nichols*, 989 F.2d 393 (10th Cir. 1993): "demeaning, dehumanizing, undignified, humiliating,

terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission."  *Mary*

*Beth G.*, 723 F.2d at 1272; *Chapman*, 989 F.2d at 396.  However, this is only half the equation. To determine the constitutionality of a strip search, I am to weigh the indubitably serious intrusion upon personal rights against the need for the particular search.  *Bell v. Wolfish*, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979); *Chapman*, 989 F.2d at 395.

The defendants urge a rule that strip searches are reasonable where, as here, the complainant was arrested on suspicion of commission of a violent crime.  Mrs. Archuleta asserts that her claim can be dismissed on nothing less than a rule that strip searches are *per se* reasonable when the detainee is suspected of domestic violence: no other ground appears here to support the decision to strip search.  She argues that such a ruling is inappropriate both because not all violent crimes are equal and because it was not clear to Deputy Mandelko that she was suspected of a violent crime at all.

Mrs. Archuleta and Deputy Mandelko both refer to the warrant on the authority of which Mrs. Archuleta was arrested.  They dispute whether the warrant apprised Deputy Mandelko that the harassment offense of which Mrs. Archuleta was suspected constituted a violent crime.  I need not consider the warrant; the parties' respective characterizations of it are not inconsistent with the allegations of the complaint, recited above.

Some courts have intimated in dicta that it is objectively reasonable to conduct a strip search of one charged with a crime of violence.  *Weber v. Dell*, 804 F.2d 796, 801 (2d Cir. 1986), *cert. denied sub nom.*, *County of Monroe v. Weber*, 483 U.S. 1020, 107 S. Ct. 3263, 97 L. Ed. 2d 762 (1987); *Masters v. Crouch*, 872 F.2d 1248, 1255 (6th Cir. 1989), *cert. denied sub nom.*, *Frey v. Masters*, 493 U.S. 977, 110 S. Ct. 503, 107 L. Ed. 2d 506 (1989); *Mary Beth G.*, 723 F.2d at 1272-1273.  Some courts have so held.  *Arruda v. Fair*, 710 F.2d 886, 887 (1st Cir. 1983), *cert.*

12

*denied*, 464 U.S. 999, 104 S. Ct. 502, 78 L. Ed. 2d 693 (1983); *Dufrin v. Spreen*, 712 F.2d 1084,

1089 (6th Cir. 1983); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1447 (9th Cir. 1989);

*Hicks v. Moore*, 422 F.3d 1246, 1252 (11th Cir. 2005); *George v. City of Wichita*, 348 F. Supp.

2d 1232, 1240-1241 (D. Kan. 2004).   However, courts considering the question have expressly

disclaimed any intention to establish a *per se* rule, instead focusing only on the cases before them.

*Dufrin*, 712 F.2d at 1089; *Hicks*, 422 F.3d at 1251-1252; *George v. City of Wichita*, 348 F. Supp.

2d 1232 at 1241.   Furthermore, Deputy Mandelko is alleged in this case to have harbored a

subjective belief that Mrs. Archuleta was not the violent criminal that the LPD sought.

   The Tenth Circuit has advised that concern over the concealment of weapons or

contraband must predicate a strip search.   Before conducting a strip search, the detaining officer

must form a reasonable suspicion that the detainee is likely to be carrying concealed weapons or

drugs.   *Hill v. Bogans*, 735 F.2d 391, 394 (10th Cir. 1984); *Chapman*, 989 F.2d at 395, 397;

*Cottrell*, 994 F.2d at 734-735.   Also relevant is whether the detainee is awaiting bail or entering

the jail population.   *Cottrell*, 994 F.2d at 735.   If the detainee is unlikely to come into contact with

other detainees, a strip search is less necessary.   Finally, a thorough pat-down search can alleviate

the need for a subsequent strip search where, as here, the detainee is not in the interim allowed

out of sight of the police.   *Id*.

   Mrs. Archuleta was patted down before being booked.   She was held alone in a cell while

awaiting bail.   Though Mrs. Archuleta was arrested on suspicion of domestic violence, Deputy

Mandelko came into possession of information that created doubt in her mind whether Mrs.

Archuleta was the suspect sought.   A reasonable officer in Deputy Mandelko's position, having a

subjective belief in Mrs. Archuleta's innocence, would not have concluded that Mrs. Archuleta

possessed a concealed weapon or poses a danger to other detainees. Therefore, a reasonable officer in Deputy Mandelko's position would have known that her execution of the strip search policy violated Mrs. Archuleta's clearly-established Fourth Amendment rights.

The issue is different with respect to Sheriff Mink, sued in his official capacity as representative of Jefferson County, which enacted the policy. *Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 2005). It is sufficient to note that one cannot say, with reference only to the allegations of the complaint, that the strip search here was consonant with Mrs. Archuleta's Fourth Amendment rights.

Accordingly, it is ORDERED that:

1) Officer Butler's motion to dismiss [24] is GRANTED in part and DENIED in part;

2) the motion to dismiss of Deputy Mandelko and Sheriff Mink [18] is GRANTED in part and DENIED in part;

3) the second claim, against Officer Butler for unlawful seizure, and the fourth claim, against Deputy Mandelko for unlawful seizure and deprivation of liberty without due process, are DISMISSED;

4) the first claim, against Officer Wagner, the third claim, against Officer Butler for extraordinary arrest, and the fifth claim, against Deputy Mandelko and Sheriff Mink arising out of the strip search, survive; and

5) litigation of the third claim for relief shall be limited to the question in what manner Officer Butler performed the arrest.

Dated: February __27__, 2007, in Denver, Colorado.

BY THE COURT:

    s/Lewis T. Babcock
Lewis T. Babcock, Chief Judge